UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| MELINDA A. MAGEE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:13-cv-01723-TWP-DKL |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Melinda A. Magee ("Ms. Magee") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and for Social Security Supplemental Income ("SSI") under Title XVI of the Act.[1] For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I. BACKGROUND

**A. Procedural History**

Ms. Magee filed applications for DIB and SSI on October 23, 2008, alleging a disability onset date of May 2, 2008. These claims were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge. Ms. Magee failed to appear at her hearing on August 10, 2010, and her case was dismissed. Ms. Magee appealed, and in January 2012, the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

1

Appeals Council remanded the matter to another administrative law judge for consideration as to whether she had good reason for not appearing at the first hearing. Ms. Magee appeared with counsel before Administrative Law Judge Tammy Whitaker (the "ALJ") in September 2012. On January 7, 2013, the ALJ issued a decision in which she found that Ms. Magee had good reason for not attending her first hearing, but also found, on the merits, that Ms. Magee was not disabled. On September 23, 2013, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

### B. Factual Background

Ms. Magee was 43 years old at the time of the ALJ's decision, and 38 years old on her alleged disability onset date. She had past work as a cashier checker, deli-slicer, gas station attendant, numerical control machine operator, receptionist, customer service representative, bartender, telemarketer, truck driver, and informal server. Ms. Magee alleges disability due to mental impairments, including bipolar disorder, major depression, anxiety, schizophrenia, dissociative identity disorder, and a personality disorder.

Ms. Magee received several psychiatric evaluations in 2008 and 2009. In August 2008, she was seen in the emergency department at OSF Saint Francis Medical Center. Doctors noted that she was unable to afford to fill her prescriptions, but that she indicated that her symptoms were fairly well controlled on medication. In November 2008, Ms. Magee was assessed at White Oaks Human Service Center ("White Oaks"), which provides mental health services. She indicated that her medications helped her; however, her then current risk of harm to self was listed as moderate and she was noted as having an irritable attitude and flat affect. In December 2008, Ms. Magee's treating physician, Dr. Narayana Reddy ("Dr. Reddy") at White Oaks, diagnosed her with bipolar disorder with possible psychotic features, and possible post-traumatic stress disorder. Ms.

Magee reported mood swings, racing thoughts, and three suicide attempts. She was seen by Dr. Reddy again in March, May, and June of 2009. She continued to be diagnosed with bipolar disorder with possible psychotic features, and her Global Assessment of Functioning ("GAF") score was assessed at 50.

On September 2, 2010, Dr. Reddy made the decision to hospitalize Ms. Magee because she presented with an unkempt appearance and had been unable to bandage her head from a fall five days before. Her activities of daily living were very poor; she was not eating, had no running water or electricity, had not bathed, and was characterized as psychotic. She was assessed a GAF score of 30. Ms. Magee was hospitalized for five days, during which she got proper rest and meals, and she was characterized as mentally and physically stable upon her release. Following the hospitalization, Ms. Magee decided to move from her home in Illinois to her parents' house in Indiana. Between September 2010 and March 2011, Ms. Magee was treated at Meridian Health Services. She was diagnosed with paranoid type schizophrenia and assigned a GAF score of 35. After April 2011, Ms. Magee visited Meridian Health Services twice, but only for physical complaints.

## II.     DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent him from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or

that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.     THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Magee meets the insured status requirements of the Act through December 31, 2012, for purposes of DIB. At step one, the ALJ found that Ms. Magee had not engaged in substantial gainful activity since May 2, 2008, her alleged onset date. At step two, the ALJ found that Ms. Magee had the following severe impairments: history of back pain; lumbago; scoliosis; osteoarthritis; diabetes mellitus; obesity; bipolar disorder with psychotic features and episodes of major depression and anxiety; polysubtance abuse; paranoid schizophrenia; dissociative identity disorder; and a personality disorder. At step three, the ALJ found that Ms. Magee does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Magee has the residual functional capacity to perform medium work with the following restrictions: she can lift or carry fifty pounds occasionally and ten pounds frequently; she can only stand or walk for six hours per eight-hour workday; she can only sit for six hours per eight-hour work day; no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or

scaffolds; limited to work that allows a break and/or meal break every two hours out of an eight-hour shift; work must be limited to simple, routine, and repetitive tasks in a work environment free of any fast paced production requirement; work must involve only simple work related decisions and have few, if any, workplace changes; no interaction with the public and only occasional interaction with coworkers with no tandem tasks; only occasional interaction with supervisors with no tandem tasks; work must allow her to be off tasks 10% of the day, in addition to regularly scheduled breaks; the work must allow, on average, one absence a month with an absence being defined as failing to appear for a scheduled shift, being tardy for a scheduled shift, or leaving early for a scheduled shift. At step four, the ALJ determined that Ms. Magee is unable to perform any of her past relevant work. At step five, the ALJ found that considering Ms. Magee's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, concluding that she is not disabled as defined by the Act.

## IV. ANALYSIS

Ms. Magee argues that the ALJ erred at step three in her determination that she did not meet the requirements of listing 12.03 and 12.04; by failing to summon a medical advisor to testify regarding medical equivalence; by making an improper credibility determination; and in determining Ms. Magee's RFC at step five. For each of her arguments, Ms. Magee alleges that the ALJ failed to consider evidence supporting a finding of disability, including her GAF scores, records from Dr. Reddy showing she had problems with activities of daily living in September 2010, and her diagnosis of paranoid schizophrenia and bipolar disorder with psychotic features.

### A. Step Three Analysis

Ms. Magee argues that the ALJ ignored or rejected evidence proving her disability, specifically in determining whether she satisfied the "B criteria" for listings 12.03A and 12.04A.

6

She asserts that the ALJ failed to consider consistent GAF assessments of below 50 as noted in Dr. Reddy's medical evaluations, which she argues are inconsistent with the ALJ's interpretation of the evidence of Ms. Magee's impairments.

The Court finds that the ALJ did consider Ms. Magee's low GAF assessment scores. The ALJ cited to exhibits 8F ([Filing No. 14-7, at ECF p. 75](Filing No. 14-7, at ECF p. 75)), 9F ([Filing No. 14-7, at ECF p. 105](Filing No. 14-7, at ECF p. 105)), 13F ([Filing No. 14-8, at ECF p. 91](Filing No. 14-8, at ECF p. 91)), and 14F ([Filing No. 14-9, at ECF p. 17](Filing No. 14-9, at ECF p. 17)), which are records that Ms. Magee claimed the ALJ ignored. (Filing No.14-2, at ECF p. 19). In addition, the ALJ specifically discussed Ms. Magee's "various low Global Assessment of Functioning (GAF) scores" in assessing her functional limitations, and determined that the GAF scores are used to make treatment decisions, not to make decisions regarding disability as defined by the Act. ([Filing No. 14-2, at ECF p. 22](Filing No. 14-2, at ECF p. 22)). While an ALJ may consider GAF scores as evidence supporting a finding of disability, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting *Wilkins v. Barnhart,* 69 Fed. Appx. 775, 780 (7th Cir. 2003)).

Ms. Magee also argues that the ALJ only selectively considered medical records showing that she was diagnosed with bipolar disorder and had frequent suicide attempts. The ALJ did consider that Ms. Magee had the severe impairment of bipolar disorder with psychotic features, and also cited to the medical record that Ms. Magee claimed she ignored. ([Filing No. 14-2, at ECF p. 19](Filing No. 14-2, at ECF p. 19)). With respect to the evidence that Ms. Magee had difficulty with activities of daily living in September 2010, including poor hygiene and inability to keep her home up, the ALJ noted this in her opinion, but found that this occurred "during a period of questionable medication noncompliance" and that it did not persist. ([Filing No. 14-2, at ECF p. 19](Filing No. 14-2, at ECF p. 19)). Ms. Magee does not

explain how the evidence cited shows that she met or medically equaled a listed impairment, and the Court finds that the ALJ adequately supported her conclusion that Ms. Magee's impairments did not meet the criteria of the listings. (Filing No. 14-2, at ECF pp. 15-19).

### B. Failure to Summon a Medical Advisor

Ms. Magee argues that the ALJ should have summoned a medical advisor to testify regarding the issue of medical equivalency because the state agency physicians did not consider all of the medical records, thus the ALJ could not rely upon their findings with respect to medical equivalence. An ALJ is not required to seek the opinion of additional medical experts, and the decision to summon a medical expert is discretionary. *See* 20 C.F.R. § 416.927(e)(2)(iii); *see also Scheck*, 357 F.3d at 700 (concluding that Disability Determination and Transmittal ("DDT") forms conclusively establish that a physician designated by the Commissioner has given consideration to medical equivalence). While the DDT forms did pre-date some of the medical evidence in the record, an ALJ is required to obtain an updated opinion of a medical expert only when "additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the [impairment] is not equivalent in severity to any impairment in the Listing of Impairments." *Graves v. Astrue*, No. 1:11-CV-249-SEB-DKL, 2012 WL 4019533, at *3 (S.D. Ind. Sept. 11, 2012) (quoting SSR 96–6p). Ms. Magee does not identify what information in the subsequently dated medical records would have changed the ALJ's findings, and, as stated above, the ALJ did consider the psychiatric evaluations dated September 2, 2010, and March 2, 2011. (Filing No. 14-1, at ECF pp. 18-19). Thus, the Court finds that the ALJ considered all of the evidence cited by Ms. Magee, and was not required to summon a medical advisor to testify at the hearing.

### C. Credibility Determination

Ms. Magee argues that the ALJ's credibility determination is patently erroneous and is contrary to Social Security Ruling 96-7p. She asserts that the ALJ did not articulate any legitimate reason for her credibly determination and claims that it is vague. However, the ALJ did list and consider all of the factors set forth in SSR 96-7p in great detail ([Filing No. 14-2, at ECF pp. 21-23](#)), and Ms. Magee does not cite to any evidence that she believes the ALJ ignored or mischaracterized that is contrary to her analysis. The Court finds that the ALJ adequately supported her conclusion regarding Ms. Magee's credibility determination.

### D. Step Five/RFC Determination

Finally, Ms. Magee argues that the ALJ failed to support her step five determination with substantial evidence. Specifically, she argues that the ALJ failed to account for Ms. Magee's paranoid schizophrenia and bipolar disorder, her GAF scores, and failed to address the impact of Ms. Magee's mental limitations. Contrary to Ms. Magee's argument, the ALJ adequately considered her mental limitations resulting from her schizophrenia and bipolar disorder, stating that "claimant's mental impairments are further accounted for by limiting the claimant to a work environment free of fast paced production requirements, by limiting the claimant to work involving only simple work related decisions, and by limiting the claimant to work that has few, if any, workplace changes." ([Filing No. 14-2, at ECF p. 21](#)). The ALJ did not just state that these limitations as "simple, routine, and repetitive work." Ms. Magee does not cite to any evidence that would support a different outcome than that reached by the ALJ, and the Court finds that the ALJ adequately considered Ms. Magee's limitations arising from her mental impairments and supported her conclusions with substantial evidence.

## V.    CONCLUSION

For the reasons set forth above, the Court finds that the ALJ adequately supported her conclusions with substantial evidence and did not commit reversible error. Therefore, the decision of the Commissioner is **AFFIRMED**, and Ms. Magee's appeal is **DISMISSED**. SO ORDERED.

Date: 3/26/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov